**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

AMERICAN NATIONAL
INSURANCE COMPANY,

             Case No.: 8:12-cv-1683-T-35TBM

   Plaintiff,

vs.

DOROTHY SCHNEIDER,
HAROLD SCHNEIDER,
TERRY SCHNEIDER, as trustee for the
Harold and Dorothy Schneider
Irrevocable Trust,
HAROLD SCHNEIDER INVESTMENTS,
LLC, JOHN DOES 1-10,

   Defendants.
_____/

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO HAROLD SCHNEIDER
INVESTMENTS, LLC'S, MOTION FOR SUMMARY JUDGMENT**

  American National Insurance Company ("ANICO") asks the Court to deny Harold

Schneider Investments, LLC's ("HSI") Motion for Summary Judgment ("the Motion") (Dkt.

66). The Motion invites the Court to incorrectly (i) conclude that an incontestability

provision precludes ANICO from bringing this action, (ii) determine that Florida no longer

allows courts to declare void from their inception life insurance policies that are unsupported

by an insurable interest analysis, and (iii) ignore the legal requirement of "good faith"

necessary for determining that an insurable interest existed. The Motion is also based on

allegedly-undisputed facts which are disputed and it fails to account for material facts that are

not disputed. The Court should deny the Motion for the reasons more fully set forth below.

**PRELIMINARY STATEMENT**

ANICO asks the Court in Count I of its operative complaint (Dkt. 60) to follow well-established Florida law and declare void *ab initio* a $3.5 million insurance policy on the life of Harold Schneider ("the Harold Schneider Policy" or "the Policy") because the Policy lacked insurable interest at its inception. Although the application for the Policy identifies Dorothy Schneider ("Dorothy") as the owner and beneficiary, thereby giving it a veneer of legitimacy, the undisputed truth is that HSI was the Policy's actual owner and beneficiary from the Policy's inception.

Harold and Dorothy Schneider (collectively "the Schneiders"), HSI, and Nye Financial Group ("NFG") affirmatively concealed from ANICO that they had entered into an agreement before the Policy's inception which contained the following terms:

1.)   HSI would pay all the premiums for the Policy, the Schneiders would pay none;
2.)   HSI would be entitled to all the Policy's death benefits, irrespective of who was the named beneficiary;
3.)   Dorothy would transfer ownership of the Policy to HSI in the future;
4.)   If Harold Schneider ("Harold") died before the transfer of ownership, Dorothy would pay the death benefit to HSI; and,
5.)   HSI would pay Harold approximately $25,000 a year "just for breathing" as the inducement to agree to this arrangement."

By entering into this agreement and concealing it from ANICO, HSI and the Schneiders acted in bad faith, and thereby rendered invalid Dorothy's ostensible insurable interest in the Policy. HSI did not have an insurable interest in Harold's life at the inception of the Policy. Therefore, the Policy was unsupported by an insurable interest at its inception and is void *ab initio* as contrary to public policy.

HSI's Motion ignores the true substance of the transaction and relies instead on form. ANICO asks the Court to decide this case on substance, in accordance with well-established case law.

## I.      PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

The Motion's Summary of Undisputed Facts omits numerous material facts and identifies as "undisputed" facts that are in dispute.

### A.      Undisputed Material Facts Omitted from the Motion

Before and at the inception of the Policy, the Schneiders, NFG, John Nye ("Nye") and HSI (the manager of which was Randy Nye) (collectively "the Nyes") reached a simple agreement:

1. Through HSI, investors who were strangers to Harold would fund the premiums for the Harold Schneider Policy. (Harold Dep. 85:4-8; HSI I Dep. 191:10-16;[1] NFG I Dep. 52:14-17; Nye Dep. 14:6-15:3).
2. HSI would pay the premiums. (HSI I Dep. 161:6-162:4; Nye Dep. 14:24-15:3).
3. The Schneiders would not pay any of the premiums (HSI I Dep. 191:14-16; NFG I Dep. 52:18-21; Harold Dep. 85:20-22).
4. Each year, HSI would pay Harold .75% of the total amount invested by others. (Nye Dep. 16:7-20; Harold Dep. 89:8-14).
5. When Harold died, HSI would get the death benefits from the Policy. (Harold Dep. 64:9-18, 90:17-91:3; NFG I Dep. 18:10-15; HSI I Dep. 31:22-33:2, 83:3-84:18; Nye Dep. 24:11-19, 25:7-20, 184:3-17).

---

[1] John Randall Nye ("Randy Nye") was deposed on multiple occasions in multiple capacities. Randy Nye was the corporate representative designated by HSI and NFG. In an attempt to minimize confusion, Plaintiff will use the following abbreviations to reference the corresponding Randy depositions:
• HSI I Dep.: Refers to deposition of Randy Nye as HSI corporate representative on Aug. 8, 2013.
• HSI II Dep.: Refers to deposition of Randy Nye as HSI corporate representative on Sept. 24, 2013.
• HSI III Dep.: Refers to deposition of Randy Nye as HSI corporate representative on Sept. 25, 2013.
• NFG I Dep.: Refers to deposition of Randy Nye as NFG representative on Sept. 24, 2013.
• NFG II Dep.: Refers to deposition of Randy Nye as NFG representative on Sept. 25, 2013.
Additionally, the parties used the same exhibits in many depositions and in order to avoid confusion, the exhibits were numbered the same for each deposition. For purposes of this filing, Plaintiff will refer to these deposition exhibits as "Dep. Ex." followed by the exhibit number used to identify the document throughout the depositions.

6. At some point in the future, Dorothy would transfer ownership of the policy to HSI. (*See* Harold Dep. 113:-114:5; NFG II Dep. 62:23-63:11; HSI I Dep. 151:2-14).

The purpose of the agreement was to disguise the true owner and beneficiary of the Policy. (NFG II Dep. 65:10-22, 68:2-19, 70:17-71:17; HSI I Dep. 114:13-115:9). HSI intended to deprive ANICO of the opportunity to fully evaluate the transaction because it recognized that ANICO would not issue the Policy if it knew the true facts. (NFG II Dep. 70:17-71:17; HSI I Dep. 246:23-247:11, 248:16-250:13). It is undisputed that, throughout the whole process, the true beneficiary of the Harold Schneider Policy was HSI, and, indirectly, HSI's investors. (Nye Dep. 136:21-25; NFG I Dep. 18:10-15; HSI I Dep. 236:5-10).

Harold did not purchase any ownership interest in HSI. (NFG I Dep. 52:18-21). Furthermore, Harold did not perform any of his purported duties as "founder" of HSI, and was never expected to. (HSI I Dep. 41:12-17, 191:14-16; NFG II Dep. 48:2-8; Harold Dep. 210:17-211:4). Harold was merely a vehicle for HSI to purchase annuities and insurance on his life. (Nye Dep. 24:11-19, 135:18-136:25, 138:1-8; NFG II Dep. 64:10-21). Importantly, HSI did not acquire any annuity until more than a month after the Policy was issued and was not exposed to any risk of financial loss as a result of Harold's death at the inception of the Policy. (Dep. Ex. 1 at 1, Dep. Ex. 97, 98, 99; HSI I Dep. 160:5-20; NFG I Dep. 22:5-23).

HSI, with investor money, paid all the premiums for the Policy, either directly or indirectly. (Nye Dep. 14:6-15:22). Randy Nye contacted Harold just over two years after the Policy was issued (and just after the contestability period supposedly ran) to "close the loop" and have Dorothy assign ownership of the Policy to HSI, which she did. (Harold Dep. 113:13-114:5; HSI I Dep. 193:13-25; Dep. Ex. 46 at 1).

**B.** **Facts the Motion Describes As "Undisputed" But That Are Disputed**

HSI states that the annuity generated sufficient cash flow to cover the payment of the life insurance premiums. (Dkt. 66, ¶ 7). However, the annuity payouts were not used to pay the initial premium payment in the amount of $409,937.02. (HSI I Dep. 63:8-14; *see also* NFG I Dep. 52:2-11). The initial premium payment was paid by funds received directly from investors. (NFG I Dep. 53:9-20; HSI I Dep. 63:8-14).

HSI suggests that to protect against a premature death, a life insurance policy can be acquired that will replace an amount annuitized. (Dkt. 66, ¶ 9). However, ANICO disputes this contention where, as in the current matter, the Defendants purchased a life insurance policy without an insurable interest and, therefore, the purchase is illegal.

HSI contends that Harold and Dorothy "made the decision, on their own, to obtain the Harold Schneider Policy." (Dkt. 66 ¶ 11 (citing Harold Dep. 74-75)). However, Harold testified that he would not have bought the Policy if he and Dorothy had to pay the premiums, and would not have allowed the Policy to be issued without being paid by HSI to do so. (Harold Dep. 22:6-10, 75:9-23; *see also* NFG II Dep. 45:5-46:4; HSI I Dep. 41:18-42:3; Schneiders' Resp. to Req. for Admis. 1, 3).

HSI characterizes certain testimony of Bruce Pavelka, ANICO's corporate representative, as a concession that Dorothy had an insurable interest in the Policy until the ownership change in January 2011. (Dkt. 66 ¶ 14 (citing Pavelka Dep. 18-23)). However, during the line of questioning cited by HSI, Mr. Pavelka was not asked about the impact of the undisclosed agreement on the insurable interest issue. When asked about those facts, he

made clear ANICO's position that the Policy was not supported by an insurable interest from

its inception. (Pavelka Dep. 87:20-89:11). Mr. Pavelka explained:

> Q. Mr. Pavelka, earlier today, Mr. Johnson was asking you questions about insurable interests; and specifically he asked you whether Dorothy Schneider had an insurable interest in the life of Harold Schneider. Do you believe that Harold Schneider Investments had any insurable interest in the life of Harold Schneider?
> A. Never did.
> Q. Not at any time?
> A. Not at any time.
> Q. Are you aware of an agreement at the inception of the Harold Schneider policy between Harold Schneider Investments and the Schneiders?
> A. I am aware of an agreement.
> Q. Can you tell me what your understanding – or what that agreement was?
> A. My understanding of the agreement was that they would apply for a policy on Harold Schneider and that Dorothy would, you know, pose as the owner and beneficiary; and at some point, they would change the owner and beneficiary to Harold Schneider Investments and that if anything were to happen before that ownership/beneficiary change was made, that the money was to be given to Harold Schneider Investments and that, ultimately, the policy would be owned by a group of people who have no emotional or family ties to Harold Schneider.
> Q. And do you believe that there was an insurable interest in this policy in the manner that ANICO is aware of today that was structured?
> (Objection)
> A. I don't believe that there was ever an insurable interest in this policy.
> Q. So when the policy was – was issued, American National does not believe that there was insurable interest at the time?
> (Objection)
> A. There was never an insurable interest. Understanding the entire plan, the scheme that was there, an insurable interest never existed.

(*Id.*).

HSI states in the Motion that there was no agreement between Dorothy and any

individual or entity regarding the transfer of her ownership of the Policy. (Dkt. 66 ¶ 15).

However, this statement ignores Dorothy's testimony that she allowed her husband to take

care of all the insurance decisions for her. (Dorothy Dep. 15:8-10, 34:14-20). The

uncontroverted testimony is that Harold, acting on Dorothy's behalf, agreed to transfer the ownership of the Policy, and this agreement was in place at the inception of the Policy. (Harold Dep. 21:9-18; HSI I Dep. 151:2-14).

HSI states that ANICO failed to conduct an investigation, during the two-year contestability period. (Dkt. 66, ¶ 17). However, ANICO requested information from the insured regarding the source of premium payments and the intent to transfer ownership. (Dep. Ex 7). ANICO conducted this investigation in the form of a premium funding intent form as well as an inspection conducted by phone with the insured. (Marquis Dep. 47:9-13; Dep. Ex. 7, 12, 13, 119).

HSI also represents that in December 2010/January 2011, Dorothy Schneider transferred her ownership interest in the Policy to HSI. (Dkt. 66, ¶ 20). However, from the inception of the policy, HSI intended to acquire the Policy and was considered the de facto owner of the Policy. (Harold Dep. 61:23-62:7; Nye Dep. 136:21-25; HSI I Dep. 31:22-33:2, 151:2-14).

## II.   <u>ARGUMENT AND MEMORANDUM OF LAW</u>

### A.   **Summary Judgment Principles**

Summary judgment is only appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006). All potential inferences from the facts alleged are to be drawn in favor of ANICO, as the non-moving party. *Allen v. Tyson Foods, Inc.¸* 121 F.3d 642, 646 (11th Cir. 1997).

**B.      Incontestability Clause Is Not Applicable To Contracts That Are Void From Their Inception**

HSI argues that the Policy's incontestability provision precludes ANICO from seeking a judicial declaration that the Policy is void from its inception. However, Courts will not allow an illegal policy to remain unaddressed simply because it has purportedly been in existence for more than two years. The illegality of the Harold Schneider Policy means that no terms within the Policy have ever taken effect, including terms purporting to make the Policy incontestable.

1.      Courts Do Not Apply the Incontestability Clause When A Policy Is Void

An incontestability clause has no effect if the contract in which it is found never existed. Florida's incontestability statute requires that policies issued in Florida contain language which establishes a *contractual* contestable period that only takes effect if the policy is placed in force. It does not create a *statutory* contestability period. Fla. Stat. § 627.455; *see John Hancock Life Ins. Co. v. Rubenstein*, No. 1:09-cv-21741-UU, Dkt. 28, at 5 n.4 (S.D. Fla. Sept 1, 2009) ("*Rubenstein*") (attached as Exhibit A). Additionally, the statutory language itself makes clear that the incontestability period only applies if a policy is in force. *Id.* A policy without an insurable interest is void from its inception and thus is never in force. Therefore, where a policy is void *ab initio* for lack of insurable interest, the policy's two-year incontestable provision is deemed never to have taken effect, and therefore cannot act to bar the insurer's claims. *Rubenstein* at 5; *Pruco Life Ins. v. Brasner ("Brasner I")*, 2011 WL 134056, *6 (S.D. Fla. Jan. 7, 2011).

This is the majority rule around the country. *Brasner I* at *5 (collecting cases). It is also consistent with the majority (in fact, all but one) of Florida federal and state decisions;

one outlier case, *US Bank*, is discussed below. *See, e.g., Brasner I*, , at *6 ("Accordingly, the Court will allow Plaintiff to pursue its claim that [the policy] is void *ab initio*, because should Plaintiff prevail, the incontestability never went into effect and therefore never expired."); *Rubenstein*, at 5 ("Additionally, if the Policy is void *ab initio* because an insurable interest is lacking, the incontestability clause would be of no effect."); *Sciaretta v. Lincoln Nat. Life Ins. Co.*, 899 F. Supp. 2d 1318, 1328 (S.D. Fla. 2012) ("First, if the Policy is found to be void *ab initio* because there was no insurable interest at its inception, then the contestability period is not applicable."); *see also TTSI Irrevocable Trust v ReliaStar Life Ins. Co.*, 60 So. 3d 1148, 1149-51 (Fla. 5th DCA 2011) (affirming policy that lacked insurable interest was void *ab initio* when insurer cancelled policy more than two years after the issue date).

HSI argues that incontestability provisions bar the insurer from challenging a policy for misrepresentation or fraud in the policy's application once the contestability period expires. (Dkt. 66 at 13-14). HSI's argument is irrelevant. While this case involves misrepresentations in the application of the Policy, ANICO is not seeking to rescind the Harold Schneider Policy for fraud or misrepresentation in the application. ANICO's claim instead is based on the absence of an insurable interest. In fact, even if no misrepresentations had been made, and ANICO had issued the Policy based on the truthful information, the Policy would still be illegal and unenforceable because it is unsupported by an insurable interest. *See TTSI*, 60 So. 3d at 1150 ("Rather, neither party could elect to give effect to the policy at issue because it was void at the outset.").

Moreover, the courts have a long history of rejecting affirmative defenses asserted to protect illegal contracts. It is a firmly established principle of Florida law that the defenses of

waiver and estoppel do not apply to transactions that contravene public policy. *See Montsdoca v. Highlands Bank & Trust Co.*, 85 Fla. 158, 163 (1923) ("The doctrines of estoppel and waiver do not in general apply in transactions that are forbidden by statute or that are contrary to public policy."); *Dep't of Health & Rehab. Serv. v. E.D.S. Fed. Corp.*, 631 So. 2d 353, 355 (Fla. Dist. Ct. App. 1994) ("Waiver does not apply, however, in transactions forbidden by statutes or against public policy."); *see also* 11 Fla. Jur. 2d *Contracts* § 137 (2011). Florida courts have also consistently held that the *in pari delicto* doctrine will not make an otherwise void contract effective. *See Local No. 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 821 (Fla. 1953). Neither can a contract void as against public policy or statute be made valid by ratification. *United States v. Grossmayer*, 76 U.S. 72, 75 (1869); *see also* 17A Am. Jur. 2d Contracts § 308 (2013). "By the same token, a contract that is void because it violates the law does not become enforceable . . . by virtue of laches." *Davis v. Agua Sierra Res., L.L.C.*, 2009 WL 2870070, *2 (Ariz. Ct. App. 2009); *see also Red Rover Copper Co. v. Indus. Comm'n*, 118 P.2d 1102, 1107 (Ariz. 1941); *Harding v. Heritage Health Products Co.*, 98 P.3d 945, 949 (Colo. Ct. App. 2004); *Geel v. Valiquett*, 289 N.W. 306, 313 (Mich. 1939).

Incontestability, similar to other affirmative defenses, is simply unavailable when a contract is void *ab initio* as against public policy. To hold otherwise would allow parties to an illegal contract, by their own actions or inactions, to deprive the Court of the ability to protect the public interest by ruling the contract void from its inception. Giving the parties

who created an illegal contract the power to prevent a court from finding it to be illegal would be entirely at odds with Florida law and public policy.

        2.    <u>Public Policy That Makes Illegal Contracts Void Trumps Public Policy Underlying Incontestability</u>

HSI argues that Florida's public policy favoring incontestability of life insurance policies procured by fraud trumps Florida's public policy requiring a life insurance policy to be supported by an insurable interest at its inception. (Dkt. 66 at 13-16). This argument is without merit. Florida has a long standing public policy against the purchase of life insurance for the purpose of "pure wagers." *See Lopez v. Life Ins. Co. of Am.,* 406 So. 2d 1155, 1158 (Fla. 4th DCA 1981). "A contract of insurance upon a life in which the insured has no interest is a pure wager that gives the insured a sinister counter interest in having the life come to an end." *Grigsby v. Russell*, 222 U.S. 149, 154 (1911). The insurable interest requirement was instituted to protect insureds against the moral hazard created when a beneficiary has a motivation to bring about the death of an insured to accelerate a policy's payout. *See id.* at 154-55.

STOLI transactions are founded on fraud and structured to prevent an insurance company from discovering the existence of the illegal contract for at least two years after the policy is issued; this case serves as a perfect example. The public policy underlying the incontestability statute is to give a guaranty against expensive litigation and giving the company a reasonable time and opportunity to ascertain whether the insurance contract should remain in force. *Pruco Life Ins. CO. v. U.S. Bank,* No. 12-cv-24441, 2013 WL 4496506, *3-*4 (S.D. Fla. Aug. 20, 2013). The incontestability clause was never intended to benefit individuals who develop sophisticated plans to seek to profit from the death of

another. Giving HSI the benefit of an incontestability provision would reward HSI for purposely concealing the illegal contract for two years to reap the benefit of that illegal contract. *See Brasner I* at \*6 (citing *Settlement Funding, LLC v. AXA Equitable Life Ins. Co.*, 2010 WL 3825735, \*5 (S.D.N.Y. Sept. 30, 2010)). The Court should give effect to the public policy that protects the public and insureds from contracts that incent murder, not the financial interests of those who procure such illegal contracts.

> 3.    *U.S. Bank* Was Wrongly Decided

HSI relies on a recent decision from the Southern District in which the judge concluded that the incontestability clause bars a claim that a policy is void *ab initio* for want of an insurable interest. (Dkt. 66 at 14-16 (citing *U.S. Bank*, 2013 WL 4496506). *U.S. Bank* is at odds with the majority of cases that have addressed this issue. The U. S. Bank court reasoned that "[i]n a STOLI context, a lack of insurable interest may not be divided from the fraud that created it" and that the "lack of insurable interest claim is ultimately traceable to fraud." 2013 WL 4496506 at \*5. This is the conclusion other courts have warned against, and this Court should avoid reaching the same incorrect conclusion. *See Schaal v. Race*, 135 So. 2d 252, 257 (Fla. 2d DCA 1961) ("The illegality here spoken of, although analogous to some [kinds] of constructive fraud, is, of course, to be carefully distinguished from fraud.") By refusing to enforce a contract that violates public policy, the court does not protect the parties to the contract, but instead protects the general public. *Id.* ("If a contract is tainted with the vice of illegality, it is held to create no obligation, not from any concern for the individual rights of the parties who may be equally in fault, but from a regard for the public.").

Additionally, *U.S. Bank* looks to the public policy underlying the incontestability statute, but seemingly ignores the public policy underlying the insurable interest requirement. 2013 WL 4496506 at *3-*4. As discussed above, the Court should uphold the more important policy that underlies the insurable interest requirement.

The court in *U.S. Bank* determined that allowing the insurer to contest a life insurance policy after the contestability period would result in an undeserved windfall for the insurer and place an undue burden on the policyholder. 2013 WL 4496506 at *5. However, the court failed to recognize that refusing to enforce illegal policies is for the benefit of the public, not the parties. *Schaal*, 135 So. 2d at 257. Additionally, by electing to leave the parties to an illegal contract as it found them (which is the courts' universal reaction to declaring a contract illegal and void from its inception), courts regularly leave one party to the illegal contract in the possession of money that the other party would like to have back, regardless of whether this may be characterized as a "windfall." There's no reason to treat this case any differently than any other case of this type.

Moreover, an illegal contract should not be left intact just because litigating its invalidity, or declaring it invalid, may burden a policyholder; this is not an exception to public policy rendering such contracts void. Besides, the holding in *U.S. Bank* effectively *increases* the burden on the policyholder. Under *U.S. Bank*, a policyholder will continue to pay premiums on the policy until the insured dies at which point the insured's estate must bring an action under section 627.404(4) to recover the death benefits paid. Interpreting the law in accordance with ANICO's position allows the insurer to take on that burden before the insured even dies and while evidence from all parties to the transaction—including the

insured—can be adduced. Thus, HSI's professed concern about creating an undue burden on the policyholder by litigating or voiding the policy is misplaced.

Finally, in this case, in the Private Placement Memorandum, HSI and its investors expressly recognized and accepted the risk that ANICO would seek to have the Harold Schneider Policy declared void for lack of insurable interest. (Dep. Ex. 56 at 7, 14-15; HSI I Dep. 155:8-17). Indeed, HSI represented to potential investors that "[a]n insurer could refuse to pay all amounts expected under Life Policies based on its conclusion that the Company did not have an insurable interest in the Founder and that the Company's investment strategy was an illegal wagering contract." (Dep. Ex. 56, at 7). In exchange for the benefits of this "investment," they gambled that they would have to litigate the issue and possibly lose their money. There is certainly nothing wrong with requiring them to suffer the anticipated consequences of losing this ill-advised bet.

In summary, the contractual incontestability clause does not preclude ANICO from seeking a declaration that the Harold Schneider Policy is void *ab initio*, and it would be against public policy to apply the incontestability provision in a manner that prevents the Court from entering such a declaration.

**C.    Fla. Stat. § 627.404 and 627.405 Do Not Save the Policy**

Florida law is clear that life insurance policies that are procured without an insurable interest are illegal.

> Any individual of legal capacity may procure or effect an insurance contract on his or her own life or body for the benefit of any person, but **no person shall procure or cause to be procured or effected an insurance contract on the life or body of another individual unless the benefits under such contract are payable to the individual insured or his or her personal representatives, or to any person having, at the time of such contract was**

**made, an insurable interest in the individual insured.** The insurable interest need not exist after the inception date of coverage under the contract.

Fla. Stat. § 627.404 (emphasis added).

HSI argues that this statute, when modified in 2008, changed Florida law by allowing a policy to be enforced where there is no insurable interest at inception. However, the legislative history specifically disproves this contention. Fla. Senate Bill Analysis, SB 648 at 5 (Mar. 11, 2008) ("This bill does not address whether an insurance contract is void if there is not an insurable interest . . ."). This legislative history precludes one from reading section 627.404's silence on this issue as a change in the law. Furthermore, Florida state and federal decisions following the 2008 amendments continue to declare such policies void *ab initio*. *See, e.g., TTSI*, 60 So. 3d at 1149-51 (complaint filed in 2009, opinion issued in 2011); *Sciaretta*, 899 F. Supp. 2d at 1325; *Brasner I*, 2011 WL 134056 at *4; *AXA Equitable Life Ins. Co. v. Infinity Fin. Group,* 608 F. Supp. 2d 1349, 1356-57 (S.D. Fla. 2009).

HSI's argument that section 627.404 does not contain a provision that renders a contract that is unsupported by an insurable interest void, and therefore that such contracts are not void, misses the mark: this consequence is found in the common law, not the statute. (*See* Dkt. 66 at 11). The statute renders a policy that is procured without an insurable interest illegal; the common law makes such a contract void and unenforceable. *See, e.g., Harris v. Gonzalez*, 789 So. 2d 405, 409 (Fla. 4th DCA 2001) ("A contract which violates a provision of the constitution or a statute is void and illegal, and, will not be enforced in our courts."); *Jupiter Med. Ctr., Inc. v. Visiting Nurse Ass'n of Fla., Inc.*, 72 So. 3d 184, 186 (Fla. 4th DCA 2011) ("The principle that courts will not enforce illegal contracts is well established.") (internal citation omitted).

Section 627.404 was amended to clarify existing Florida law and codify Florida Supreme Court rulings holding that Florida law prohibits issuance of an insurance policy to one with no insurable interest in the insured. *Atkinson v. Wal-Mart Stores, Inc.*, 349 F. App'x 426, 429 (11th Cir. 2009) (citing Fla. Senate Bill Analysis, SB 648 (Mar. 11, 2008); *Life Ins. Co. of Ga. v. Lopez*, 443 So. 2d 947 (Fla. 1983)); *see also* Dep. Ex. 124 at 10. Under Florida law, life insurance policies that lack insurable interests are void *ab initio* and section 627.404 did nothing to alter that law. *See TTSI*, 60 So. 3d at 1150 (collecting cases); *Knott v. State ex rel. Guaranty Income Life Ins. Co.*, 186 So. 788, 790 (Fla. 1939).

HSI's argument that the language in section 627.405 reveals a legislative intent behind section 627.404 to prevent courts from invalidating life insurance policies that are contrary to public policy because they lack insurable interest is similarly misguided. (Dkt. 66 at 11-12). Again, HSI attempts to read the legislature's silence as an affirmative act. In addition to the specific legislative history which states that section 627.404 does not address whether policies are void, HSI's interpretation is contrary to the important canon of statutory construction that statutory provisions altering common-law principles must be narrowly construed. *Rollins v. Pizzarelli*, 761 So. 2d 294, 300 (Fla. 2000).

HSI also claims that section 627.404(4) creates an exclusive remedy: that the estate of the insured may recover from the beneficiary after the insurer pays the benefits on the illegal policy. (Dkt. 66 at 12). HSI misinterprets the statute. This provision addresses the situation in which an insurer has already paid benefits under a policy that is then determined to have been issued in the absence of an insurable interest; it does not address the insurer's rights if it discovers the lack of insurable interest before the insured dies. The statute clearly does not

preclude an insurer from availing itself of the long-established right to seek a judicial declaration that the policy is void from its inception if it happens to discover this before the insured dies.

As the case law makes clear, HSI's interpretation of Section 627.404 is misguided and policies that lack an insurable interest are illegal, violate public policy, and are void *ab initio*. Florida courts remain free to declare them void.

**D.     Good Faith Requirement Vitiates Dorothy's Purported Insurable Interest**

Florida's good faith requirement compels the Court to decide this case based on substance, not form. Life insurance policies must be obtained in good faith with respect to the insurable interest requirement. *Sciaretta,* 899 F. Supp. 2d at 1324-25; *Brasner I*, 2011 WL 134056 at *3-*4; *AXA Equitable Life,* 608 F. Supp. 2d at 1356-57. The courts have applied three non-exclusive factors in determining whether a policy was procured in bad faith:

> (1) a pre-existing agreement or understanding that the policy is to be assigned to one having no insurable interest; (2) the payment of some or all of the premiums by someone other than the insured, and in particular, by the assignee; or (3) the lack of a risk of actual future loss.

*Pruco Life Ins. Co. v. Brasner* ("*Brasner II*"), No. 9:10-cv-80804-JIC, Dkt. 246 at 16-17 (S.D. Fla. Nov. 14, 2011) (citations omitted); *see also AXA Equitable Life*, 608 F. Supp. 2d at 1357. When a policy was procured in bad faith, the insurable interest in the policyholder is destroyed and the courts look to the assignee to determine if an insurable interest exists. *AXA Equitable Life*, 608 F. Supp. 2d at 1357; *Sciaretta*, 899 F. Supp. 2d at 1325.

The undisputed facts reveal that the Harold Schneider Policy was procured in bad faith due to an undisclosed (and, through misrepresentations, affirmatively concealed) agreement which was in place at the inception of the Policy. The premiums of the Policy were paid by HSI (or its investors) and never by the Schneiders. There was no risk of actual future loss at the inception of the Policy. There was never an intention for Dorothy to retain the Policy proceeds; rather, all proceeds were to be recovered by HSI. Thus, any insurable interest that Dorothy had in Harold's life is not at issue, and the Court must look to whether the intended owner and beneficiary of the Policy—HSI—had an insurable interest at the Policy's inception. It did not.

HSI had no insurable interest in Harold's life at the inception of the policy. Although a business entity may have an insurable interest in certain owners, key personnel, and officers, Florida courts do not recognize sham arrangements put in place solely to circumvent the insurable interest requirement. Fla. Stat. § 627.404(2)(B)(9); *AXA Equitable Life*, 608 F. Supp. 2d at 1356. Even though Harold was a purported "founder" of HSI, Harold's relationship with HSI was a sham. He never paid for any ownership interest, he never performed any of his purported duties, and was never expected to do so. Harold was merely to be the strawman that enabled HSI to acquire annuities and insurance on Harold's life. Harold later became the annuitant for annuities that HSI had not acquired at the Policy's inception; HSI bought them only after the Policy, and the agreement making HSI the true owner and beneficiary, were in place. Because HSI did not have an insurable interest in Harold's life at the inception of the Policy, the Policy is void *ab initio*. The later purchased

annuities are merely a smokescreen used by HSI to cloud the true substance of the transaction and to create the illusion of insurable interest.

**I.      Incontestability Does Not Bar the Civil Conspiracy Claim**

ANICO's civil conspiracy claim against HSI will come into play under only one set of circumstances: if the Court determines that the Policy is void from its inception, but does not allow ANICO to keep the premiums. (3d Am. Compl., Dkt. 60 at ¶ 68). To get to that point, the Court must decide that the incontestability provision does not apply. If it does not apply, then it does not have the effect HSI argues in the Motion. Should the Court rule that the incontestability provision *does* apply, then the Court will not declare the Policy void from its inception, and we will never reach the conspiracy claim. So, under no set of circumstances can the incontestability provision bar ANICO's civil conspiracy claim.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Defendant's Motion for Summary Judgment.

Dated: December 23, 2013                     Respectfully submitted,

                                             _/s/ Brett J. Preston_____
                                             Brett J. Preston (FBN 603716)
                                             bpreston@hwhlaw.com
                                             Robert M. Fulton (FBN 0008516)
                                             bfulton@hwhlaw.com
                                             HILL, WARD & HENDERSON, P.A.
                                             101 East Kennedy Blvd., Suite 3700
                                             Post Office Box 2231
                                             Tampa, Florida 33601
                                             (813) 221-3900 (Telephone)
                                             (813) 221-2900 (Facsimile)

                                             Janet L. Rushing
                                             jrushing@greerherz.com

*Admitted Pro Hac Vice*
Laura Balhoff Englert
lenglert@greerherz.com
*Admitted Pro Hac Vice*
GREER, HERZ & ADAMS, L.L.P.
2525 South Shore Blvd., Suite 203
League City, TX 77573
409-797-3200

*Attorneys for*
*American National Insurance Company*

<u>CERTIFICATE OF SERVICE – CM/ECF</u>

I hereby certify that on December 23, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Robert E. Johnson, Esq.
rjohnson@gray-robinson.com

John A. Yanchunis, Esq.
jyanchunis@forthepeople.com

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

Jule Rousseau, Esq.
Arent Fox LLP
1675 Broadway
New York, NY 10019-5820

  /s/ Brett J. Preston
Brett J. Preston